IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

DONALD JAMES,

      Plaintiff,

v.                                        CASE NO. 5:10-cv-259-RS-GRJ

REYNALDO GEERKEN, et al,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

      Plaintiff, an inmate in the custody of the Florida Department of Corrections,

initiated this case by filing a *pro se* civil rights complaint under 42 U.S.C. § 1983.

Plaintiff is proceeding pursuant to a third amended complaint.[1]  (Doc. 35.)   The case is

presently before the Court on Doc. 43, Defendant Geerken's motion to dismiss and

Doc. 49, Defendants Izuegbu and Salvador's motion to dismiss.  Defendants move the

Court to dismiss the complaint for failure to state a claim upon which relief may be

granted pursuant to Fed. R. Civ. P. 12(b)(6).  Plaintiff filed a response in opposition to

the motion to dismiss, Doc. 67, and therefore this matter is ripe for review.[2]  For the

---

      [1] Plaintiff has also filed three "declarations" as to events and facts he alleges
developed since his third amended complaint was filed.  (Docs. 61, 72, 74.)

      [2] According to the Florida Department of Corrections online offender database,
Plaintiff is deceased.  It appears that Plaintiff died on or about November 1, 2011.
Plaintiff's cause of action does not necessarily abate because of his death, and his
personal representative can be substituted in his place.  *See Hess v. Eddy,* 689 F. 2d
977, 980 (11th Cir. 1982) ("Congress did not provide rules of survivorship for section
1983 actions."); *Wilson v. Garcia,* 471 U.S. 261, 280 (1985) (characterizing  § 1983
claims as personal injury actions for the purposes of looking to state law to apply when
federal law is lacking in civil rights actions); Fla. Stat. § 46.021 (2011) ("No cause of

following reasons, the undersigned recommends that the motions to dismiss be granted.

## I.  BACKGROUND

According to the allegations of the third amended complaint, Plaintiff suffers from Hepatitis C, which he contracted in 1975.  Plaintiff was diagnosed in 2004 with early stage fibrosis and subsequently received a 48-week course of treatment with interferon and ribavirin, with directions to repeat the treatment in 3-4 years.  Plaintiff was sentenced to 60 months imprisonment and began serving his sentence in March 2008.  Plaintiff alleges that during his incarceration with the Florida Department of Corrections at Calhoun C.I., he has been denied treatment with interferon and ribavirin, and this "has exasperated his medical condition causing further degeneration of his liver to a serious stage of cirrhosis."  (Doc. 35, p. 6.)  Plaintiff alleges that the periodic diagnostic procedures, regular visits to a specialist, and treatment with diuretics and blood pressure medications were insufficient.  Plaintiff contends that the "only effective treatment" currently accepted by the mainstream medical community is 48 weeks of interferon and ribavirin.  (*Id.* at 9.)

Plaintiff names as Defendants, in their official and individual capacities, Expedito M. Salvador, clinician assistant at Calhoun C.I.; Dr. Moses Izuegbu, chief medical

---

action dies with the person.  All causes of action survive and may be commenced, prosecuted, and defended in the name of the person prescribed by law.").  Typically, under Fed. R. Civ. P. 25(a), the undersigned would direct Defendants to file a notice of death with the Court and Plaintiff's personal representative would have 90 days to file a motion for substitution.  If no motion were filed, the case would be dismissed.  However, in the instant case, the action is due to be dismissed and to proceed with the Rule 25 procedures would be futile.

officer at Calhoun C.I.; and Dr. Reynaldo Geerken, a physician at the Lake Butler Reception and Medical Center working under contract with the DOC.  (*Id.* at 2.)  Plaintiff alleges that Defendants violated his Eighth Amendment rights and the Americans with Disabilities Act ("ADA").  (Doc. 35.)  It is unclear whether Plaintiff intended to assert a state law negligence claim as well.  His Third Amended Complaint does not reference a state law claim, yet Plaintiff has previously filed a "Certificate of Reasonable Investigation" pursuant to Fla. Stat. § 766.104(1).  (Doc. 10.)  In Plaintiff's response to Defendants' motions to dismiss, he states at one point that he "notified Defendants of intent to litigate for medical malpractice" yet later notes that "he claims deliberate indifference and not medical malpractice or neglect in his complaint." (*Id.* at pp. 3, 9.)

Plaintiff seeks declaratory relief, injunctive relief, medical costs, and compensatory and punitive damages.  Plaintiff asks the Court to order the Defendants to provide testing to determine the stage of his liver disease and provide curative care, including but not limited to interferon and ribavirin treatments.  Plaintiff also requests that the Court place Plaintiff on the liver transplant list, if medically indicated.  (*Id.* at pp. 11-12.)

## II.  DEFENDANTS' MOTIONS TO DISMISS

Defendants contend that dismissal of the third amended complaint is warranted on the following grounds: (1) Plaintiff has failed to state a claim for a violation of the Eighth Amendment; (2) Defendants are entitled to qualified immunity; (3) Plaintiff has failed to state a claim under the Americans with Disabilities Act (ADA); (4) Plaintiff has failed to state a state law negligence claim; and, (5) Plaintiff's claim for damages against Defendants in their official capacities is barred by the Eleventh Amendment.

(Docs. 43, 49.)

### III.  STANDARD OF REVIEW

In passing on a motion to dismiss under Rule 12(b)(6), the Court is mindful that "[d]ismissal of a claim on the basis of barebones pleadings is a precarious disposition with a high mortality rate."  *Int'l Erectors, Inc. v. Wilhoit Steel Erectors Rental Serv.*, 400 F.2d 465, 471 (5th Cir. 1968).  For the purposes of a motion to dismiss, the Court must view the allegations of the complaint in the light most favorable to plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences therefrom. *See, e.g., Jackson v. Okaloosa County, Fla.*, 21 F.3d 1532, 1534 (11th Cir.1994). Furthermore, the Court must limit its consideration to the complaint and written instruments attached as exhibits.  Fed R. Civ. P. 10(c); *GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir.1993).

In *Ashcroft v. Iqbal*, .   ___U.S. ___, 129 S.Ct. 1937, 1950 (2009), the Supreme Court articulated a two-pronged approach for evaluating a motion to dismiss under Rule 12(b)(6): The court must first determine what factual allegations in the complaint are entitled to a presumption of veracity, and then assess whether these facts give rise to an entitlement for relief.  In determining whether factual allegations are entitled to the presumption of truth, the Court stated that it was not whether the facts are "unrealistic or nonsensical" or even "extravagantly fanciful," but rather it is their conclusory nature that "disentitles them to the presumption of truth."  *Iqbal*, 129 S.Ct. at 1951. Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations of the complaint.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 546 (2007).  "While the pleadings of *pro se* litigants are 'liberally construed,'

they must still comply with procedural rules governing the proper form of pleadings."

*Hopkins v. Saint Lucie County School Bd.,* 2010 WL 3995824, **1 (11th Cir. 2010)

(unpublished) (citations omitted) (applying pleading standards of *Iqbal* and *Twombly* to

*pro se* complaint).[3]

## IV. DISCUSSION

### A. <u>Eighth Amendment Claim</u>

In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that deliberate

indifference to the serious medical needs of prisoners violates the Eighth Amendment

prohibition against cruel and unusual punishment. To establish an Eighth Amendment

violation stemming from the deprivation of medical attention, the prisoner must set forth

evidence of an objectively serious medical need and prove that the officials acted with

attitudes of deliberate indifference to his needs.  *Farrow v. West*, 320 F.3d 1235, 1243

(11th Cir. 2003).  A claim that a prisoner has been deprived of medical attention requires

that the prisoner demonstrate (1) "an objectively serious medical need," so grave that,

"if left unattended, poses a substantial risk of serious harm," and (2) that the officials'

response was so inadequate as to "constitute an unnecessary and wanton infliction of

pain," and was not "merely accidental inadequacy, negligence in diagnosis or treatment,

or even medical malpractice actionable under state law."  *Taylor v. Adams*, 221 F.3d

1254, 1258 (11th Cir. 2000).  "It is obduracy and wantonness, not inadvertence or error

in good faith, that characterize the conduct prohibited by the Cruel and Unusual

Punishments Clause[.]"  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).  Generally, an

---

[3] Pursuant to Eleventh Circuit Rule 36-2, unpublished opinions are not considered binding precedent, but may be cited as persuasive authority.

inmate who receives a medical diagnosis and care, but desires a different diagnosis or treatment, cannot show deliberate indifference.  *Hamm v. DeKalb County*, 774 f.2d 1567, 1575 (11th Cir. 1985); *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir.1991)*; see also Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) ("[A]s *Estelle* teaches, the question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment is a 'classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment.") (quoting *Estelle*, 429 U.S. at 107)).

Plaintiff's third amended complaint and response in opposition to the motions to dismiss (Docs. 35, 67) indicate that he has received periodic diagnostic procedures (blood and liver enzyme tests), regular visits to the chronic illness clinic, medications (including but not limited to Dilantin, Lasix, Inderal, Lactulose, and Aldactone), access to sick call at his institution, and several consultations with Dr. Geerken, a gastroenterologist.  Plaintiff has also received a CT scan of his abdomen and pelvis, a hepatic ultrasound, genotype testing, and a liver biopsy.  A hepatic diet was started but discontinued because it was not recommended by Dr. Geerken.  On March 8, 2010, Dr. Izuegbu informed Plaintiff that interferon is not clinically indicated for patients such as Plaintiff, who have genotype 1b.  Dr. Izuegbu also opined that there was no medical evidence that Plaintiff's liver had progressed from stage one fibrosis to end stage cirrhosis.  (Doc. 35, p. 20.)

Plaintiff indicates in his response in opposition that on February 10, 2011, Dr. Geerken told him he had cirrhosis but that he was not a candidate for interferon therapy because his disease was too far advanced and because he would be released before

the 48-week course of treatment would end.  (Doc. 67, p. 4.)  In a September 6, 2011

"Declaration" as to continued events since the filing of his third amended complaint,

Plaintiff reported that after during an August 25, 2011 consultation with Dr. Geerken,

interferon and ribavarin treatment was denied because he had less than 18 months left

of his sentence, per DOC protocol; Plaintiff's elevated iron levels restricts his candidacy;

and Plaintiff's status as a non-veteran restricts his candidacy.  (Doc. 72, p. 2.)

Plaintiff believes that he is entitled to interferon and ribavarin treatment for his

Hepatitis C.  His doctors have concluded that such treatments are not indicated by his

condition.[4]  Plaintiff's claim regarding his course of treatment is not sufficient to

establish deliberate indifference.  *See  Estelle,* 429 U.S. at 107; *Waldrop v. Evans*, 871

F.2d 1030, 1033 (11th Cir. 1989) ("'[W]e disavow any attempt to second-guess the

propriety or adequacy of a particular course of treatment.  Along with all other aspects

of health care, this remains a question of sound professional judgment.'") (quoting

*Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)); *Chance v. Armstrong*, 143 F.3d

698, 703 (2d Cir.1998) ( "[i]t is well-established that mere disagreement over the proper

treatment does not create a constitutional claim.  So long as the treatment given is

---

[4]*See also Bender v. Regier,* 385 F.3d 1133 (8th Cir. 2004) ("Interferon treatment
has serious potential side-effects, including nausea, anemia, depression, and
decomposition of the liver.  Its success rate is relatively low – 15-30% for regular
interferon and 40-50% for pegylated interferon treatment.  The selection of patients for
interferon treatment is highly individualized and depends upon many factors.
Treatment is not appropriate for individuals with advanced liver problems such as
cirrhosis.  Treatment for patients with mild liver problems may be safely deferred.
Suitability for treatment is determined by measuring the degree of liver inflammation
and fibrosis through a liver biopsy.  However, even if the appropriate threshold levels of
inflammation and fibrosis are present, treatment may be inappropriate if the patient is
too young or too old, had a previous organ transplant, or suffers from depression, other
mental health problems, heart disease, or untreated chemical dependency.").

adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."); *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir.1988) ("Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice.").

When presented with similar factual scenarios to the instant case, this Court, and others, have declined to find an Eighth Amendment violation.   In *Loeber v. Department of Corrections,* an inmate suffering from Hepatitis C alleged an Eighth Amendment violation because he was treated with lactulose and denied interferon and/or ribavirin. The Court found that DOC Defendants were entitled to qualified immunity because the inmate failed to allege facts showing a violation of a constitutional right.  2010 WL 3272611, *2-*3 (N.D. Fla. Aug. 19, 2010).  In *Baldwin v. Perron,* the district court dismissed an inmate's claim of Eighth Amendment deliberate indifference due to denial of interferon and ribavarin.  2011 WL 1059120 (M.D. Ga. Mar. 23, 2011); *Baldwin v. Perron,* 2011 WL 1103340 (M.D. Ga. Feb. 11, 2011) (Report and Recommendation of Magistrate Judge).  The plaintiff in *Baldwin* received treatment similar to Plaintiff in the instant case–periodic diagnostic procedures, clinic visits, treatment with medication–and his "disagreement with a particular mode or method of treatment" was not sufficient to establish deliberate indifference.  *Baldwin,* 2011 WL 1103340 at *6-*7. *See also Bender v. Regier*, 385 F.3d 1133 (8th Cir. 2004).

Hepatitis C is an objectively serious medical need that poses a substantial risk of serious harm.  However, Plaintiff has not presented facts to demonstrate deliberate indifference.  Plaintiff has not shown that his treatment and monitoring equated to a

disregard of the risk of Hepatitis C or was, if anything, more than negligence.  *Cf. Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004) (finding deliberate indifference where there was a "complete withdrawal of treatment" for Hepatitis C).  Accordingly, Plaintiff's Eighth Amendment claim is due to be dismissed.

### B.  ADA Claim

The ADA prohibits discrimination on the basis of disability and has been found to apply to prisoners.  *Pa. Dep't of Corr. v. Yeskey,* 524 U.S. 206, 210 (1998).  However, "the failure to provide adequate medical care is not by itself an ADA violation."  *Loeber,* 2010 WL 3272611at *3 (quoting *Scott v. Campbell,* 2009 WL 3028306 (N.D. Fla. Sept. 17, 2009)).  Accordingly, Plaintiff cannot maintain a claim under the ADA.

### C.  State Law Claim

It is arguable whether Plaintiff intended to assert a state law negligence claim. However, liberally construing his pleadings to include such an allegation, the Court should decline to exercise supplemental jurisdiction over any state law claims.  The decision to exercise supplemental jurisdiction under 28 U.S.C. § 1367(a) over pendent state law claims rests within the discretion of the district court. *Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir. 1999).  Pursuant to 28 U.S.C. § 1367(c)(3), the district court may decline to exercise supplemental jurisdiction over state law claims where the district court has dismissed all claims over which it has original jurisdiction. Where, as here, the federal claims are dismissed prior to trial – and only the state claims remain – the Eleventh Circuit has "encouraged" district courts to dismiss the remaining state claims, rather than exercising the Court's supplemental jurisdiction to resolve only the state claims. *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004).

Accordingly, with regard to Plaintiff's state law claims negligence, these claims are not appropriate for resolution in federal court and, therefore, the Court should exercise its discretion under § 1367(c)(3) and decline to exercise supplemental jurisdiction.

## VI.  CONCLUSION

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants' motions to dismiss (Docs. 43 & 49) be **GRANTED** and this case should be **DISMISSED.**

**IN CHAMBERS** this 20th day of January 2012.


*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge


## NOTICE TO THE PARTIES

**Pursuant to Fed. R. Civ. P. 72(b)(2), a party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**